## SECTION I – CONTACT INFORMATION

| PETITIONER INFORMATION ||
|---|---|
| **Petitioner/Contact Name**: (Last, First)<br>Jones, Adriana ||
| **Business/Institution Name**: (if applicable) | **Prisoner ID**: (if applicable) |
| **Address**: (Include Street, City, State, and Zip Code)<br>28 Bridgeside Blvd.<br>Mount Pleasant, SC 29464<br><br>7161 E. Rancho Vista Dr., Suite 5009<br>Scottsdale, AZ 85251 ||
| **Social Security Number/Tax Identification Number**: (Enter N/A if you do not have one)<br>N/A ||
| **Please provide an explanation why you do not have a Social Security Number, if above is N/A:**<br>Amended Omnibus Petition is being submitted on behalf of fifty-six (56) judgment creditors. ||
| **Phone**: (optional)<br>(843) 216-9250<br>(602) 697-7230 | **Email**: (optional)<br>melsner@motleyrice.com<br>sam@mitchellfirmllc.com |
| **ATTORNEY INFORMATION** (if applicable) ||
| **Attorney Name**: (Last, First)<br>Elsner, Michael<br>Mitchell, Samuel ||
| **Attorney Title**:<br>Member<br>Partner ||
| **Firm Name**: (if applicable)<br>Motley Rice LLC<br>Mitchell & Mitchell LLC ||
| **Attorney Address**: (Include Street, City, State, and Zip Code)<br>28 Bridgeside Blvd.<br>Mount Pleasant, SC 29464<br><br>7161 E. Rancho Vista Dr., Suite 5009<br>Scottsdale, AZ 85251 ||
| **Are you an attorney filing this petition on behalf of your client?**   ☒ YES   ☐ NO ||
| **Attorney Phone**: (optional)<br>(843) 216-9250<br>(602) 697-7230 | **Attorney Email**: (optional)<br>melsner@motleyrice.com<br>sam@mitchellfirmllc.com |

*If any of this information changes, you are responsible for notifying the agency of the new information.*

## **SECTION II – ASSET LIST**

*You must identify your role for each asset in your petition.  Please review the role definitions below.*

| ROLE INFORMATION (multiple roles may apply to each asset) ||
|---|---|
| **Owner** | *The person in whom primary title is vested or whose interest is manifested by the actual and beneficial use of the property, even though the title is vested in another. A victim of an offense, as defined in this section, may also be an owner if he or she has a present legally cognizable ownership interest in the property forfeited. A nominal owner of property will not be treated as its true owner if he or she is not its beneficial owner.* |
| **Victim** | *A person who has incurred a pecuniary loss as a direct result of the commission of the offense underlying a forfeiture. A drug user is not considered a victim of a drug trafficking offense under this definition. A victim does not include one who acquires a right to sue the perpetrator of the criminal offense for any loss by assignment, subrogation, inheritance, or otherwise from the actual victim, unless that person has acquired an actual ownership interest in the forfeited property; provided however, that if a victim has received compensation from insurance or any other source with respect to a pecuniary loss, remission may be granted to the third party who provided the compensation, up to the amount of the victim's pecuniary loss.* |
| **Lienholder** | *A creditor whose claim or debt is secured by a specific right to obtain satisfaction against the particular property subject to forfeiture. A lien creditor qualifies as a lienholder if the lien:*<br><br>*(1) Was established by operation of law or contract;*<br><br>*(2) Was created as a result of an exchange of money, goods, or services; and*<br><br>*(3) Is perfected against the specific property forfeited for which remission or mitigation is sought (e.g., a real estate mortgage; a mechanic's lien).* |

*Identify the asset ID and asset description for each asset you are petitioning and indicate your role as a petitioner for each asset. You may select one or more roles.*

| # | Asset ID | Asset Description | Owner | Victim | Lienholder |
|---|---|---|---|---|---|
|  | United States District Court, Southern District of New York Case No. 1:21-cr-00343-SHS | $20,896,774.00 in U.S. Currency, and all of defendant's right, title, and interest in the Specific Property (see Consent Preliminary Order of Forfeiture and Specific Property/Money Judgment filed June 13, 2023) ECF. Doc. No. 22.  See also ECF Doc. No. 234-1. | ☐ | ☑ | ☐ |
|  |  |  | ☐ | ☐ | ☐ |
|  |  |  | ☐ | ☐ | ☐ |
|  |  |  | ☐ | ☐ | ☐ |
|  |  |  | ☐ | ☐ | ☐ |

## **SECTION III – VICTIM PETITION**

*If you are filing this petition as a victim, please fill out the information below. The information must apply to all of the assets you selected as a victim role in the previous section. If you are not filing as a victim for any assets, you may skip this section.*

**I am requesting remission of this forfeiture because I am a victim of the criminal offense underlying the forfeiture of this property or am the victim of a related offense and I have suffered a pecuniary loss as a result of that offense as described below**:

"On November 4, 2019, members of the Juárez Cartel and its violent armed wing, La Línea, ambushed three women and fourteen children, murdering six of the children and their mothers and injuring the other eight children in Sonora Mexico. All of the ambushed victims are United States citizens."[1]

"Cartel assassins killed Maria Rhonita LeBaron (Rhonita and/or Nita) and her four children, twelve-year-old [H.M. Jr.], ten-year-old [K.B.M.], and eight-month-old twins [T.A.M.] and [T.G.M.]. Rhonita and her four children were *alive and conscious* when their vehicle was *most definitely intentionally set on fire*."[2]

"The Cartel also killed Christina Langford ('Christina') and Dawna Ray ('Dawna') and her two children – eleven-year-old [T.L.] and two-year-old [R.L.]. Those injured in the attack include [minor children] F.M.J., K.L., D.L., M.L., C.L., J.L., X.L., and B.L."[3]

Petitioner Victims—family members, legal guardians of injured minors, legal guardians of surviving minor children and siblings of victims, and legal representatives of the estates of the nine victims murdered—brought claims under the civil remedies provision of the Federal Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a) and, on June 24, 2022, a Judgment in favor of the Petitioner Victims and against the Juárez Cartel was entered for violation of the ATA.[4]

"There is no doubt that in bringing this action pursuant to § 2333 [Petitioner Victims were] invoking a federally created legal right."[5] Petitioner Victims' legal right vested on November 4, 2019, when the Juárez Cartel carried out an egregious act of international terrorism by murdering nine (9) United States citizens and forever altering the lives of their families. Petitioner Victims asserted their right in the United States District Court for the District of North Dakota, and on June 24, 2022, the court affirmed their right and entered judgment accordingly.[6] The Terrorism Risk Insurance Act of 2002 ("TRIA"), 28 U.S.C. § 1610 note, Section 201, provides "notwithstanding any other provision of law" Petitioner Victims the right to execute or attach their Judgment against the blocked assets of the defendant (Juárez Cartel) and/or the assets of *any* agency or instrumentality of the Juárez Cartel, which in this case, as discussed below, includes but is not limited to the Sinaloa Cartel and Cartel Jalisco Nueva Generacion ("CJNG") and Ying Sun.[7]

> TRIA defines a "blocked asset" as follows:
>
> Blocked asset.-- The term "blocked asset" means—
>
> (A) any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701; 1702); and
>
> (B) does not include property that—
>
> (i) is subject to a license issued by the United States Government for final payment, transfer, or disposition by or to a person subject to the jurisdiction of the United States in connection with a

---

[1] *Howard Miller, et al., v Juárez Cartel*, 2022 WL 2286952, at *1 (D.N.D. June 24, 2022); attached herein as Exhibit B.
[2] *Id.* (internal quotations and citations omitted) (emphasis in original).
[3] *Id.*
[4] Attached herein as Exhibit A.
[5] *Estates of Ungar ex rel. Strachman v. Palestinian Authority*, 304 F.Supp.2d 232, 266 (D.R.I. 2004).
[6] *See*, *Miller, et al., v Juárez Cartel*, 1:20-cv-00132, Order for Judgment, 1:20-cv-00132 (D.N.D. June 24, 2022).
[7] Section 201(a) of the TRIA; *see also Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d 2010) ("we find it beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an [agency or] instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment.").

transaction for which the issuance of such license has been specifically required by statute other than the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the United Nations Participation Act of 1945 (22 U.S.C. 287 et seq.)[8]

Executive Order 14059 of December 15, 2021 ("E.O. 14059") imposes, pursuant to the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) ("IEEPA") and other authorities, a litany of sanctions against "[d]rug cartels, transnational criminal organizations, and their facilitators." The Juárez Cartel and its agencies or instrumentalities, including the Sinaloa and CJNG Cartels have been designated pursuant to E.O. 14059.

When the TRIA was enacted, Congress "inten[ded] to include within the definition of 'blocked asset' any asset of a terrorist party that is held by the United States. This [was] intended as an ***explicit waiver of any*** principle of law under which the United States might not be subject to service and enforcement of any judicial order or process relating to execution of judgments, or attachments in aid of such execution, in connection with terrorist party assets that happen to be held by the United States. In this respect, the United States is to be treated the same as any private party or bank which holds assets of a terrorist party, and such terrorist party assets held by the United States ***are not immunized from court procedures to execute against such assets***."[9]

The ATA explicitly states that assets blocked pursuant to the Foreign Narcotics Kingpin Designation Act (21 U.S.C. § 1904(b)) ("Kingpin Act") are specifically included in the TRIA's definition of blocked assets that may be used to satisfy judgments of U.S. nationals.[10]

"The Kingpin Act and its corresponding regulations block all property and interest within the United States owned by foreign persons designated by [the United States Treasury Department, Office of Foreign Assets Control ("OFAC")] as 'Specially Designated Narcotics Traffickers.'"[11] Specially Designated Narcotics Traffickers are:

(a) Significant foreign narcotics traffickers; and

(b) Foreign persons designated by the Secretary of the Treasury, in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State, because they are found to be:

(1) Materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a specially designated narcotics trafficker;

(2) Owned, controlled, or directed by, or acting for or on behalf of, a specially designated narcotics trafficker; or

(3) Playing a significant role in international narcotics trafficking; and

(c) Entities owned in the aggregate, directly or indirectly, 50 percent or more by one or more specially designated narcotics traffickers.[12]

The President of the United States has determined that the Juárez, Sinaloa, and CJNG Cartels are significant foreign narcotics traffickers.[13] As such, all Juárez, Sinaloa, and CJNG property and interests in property are subject to the Kingpin Act sanctions by and through the blocking regime applicable to "specially designated narcotics traffickers" as set forth in 31 C.F.R. § 598.101 *et seq.*

"The terms blocked account and blocked property shall mean any account or property subject to the prohibitions in § 598.202 held in the name of a specially designated narcotics trafficker, **or in which such person has an interest**,

---

[8] TRIA section 201(d)(2).
[9] 148 Cong. Rec. S11524 (Sen. Harkin) (emphasis added).
[10] *See* 18 U.S.C. § 2333(e).
[11] *Marron v. Moros*, 2023 WL 3619308, at *2 (S.D. Fla. May 24, 2023) (citing 21 U.S.C. § 1904(b); 31 C.F.R. §§ 598.202, 598.301).
[12] 31 C.F.R. § 598.314.
[13] Juárez Cartel: https://sanctionssearch.ofac.treas.gov/Details.aspx?id=8237; Sinaloa Cartel: https://sanctionssearch.ofac.treas.gov/Details.aspx?id=11440; CJNG: https://sanctionssearch.ofac.treas.gov/Details.aspx?id=17671.

and with respect to which payments, transfers, exportations, withdrawals, or other dealing may not be made or effected except pursuant to a license or other authorization from OFAC expressly authorizing such action."[14]

Section 598.202 states that "[a]ll property and interests in property that are in the United States, that come within the United States, or that are or come within the possession or control of any U.S. person, of a specially designated narcotics trafficker are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."[15] Section 598.202 also delineates "prohibitions on the following transactions: (1) The making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to paragraph (a) of this section; and (2) The receipt of any contribution or provision of funds, good, or services from any person whose property and interests in property are blocked pursuant to paragraph (a) of this section."[16]

Due to the "ability to transfer funds or other assets instantaneously" and in order for the sanctions set forth in E.O. 14059 to be effective against the Juárez, Sinaloa, and CJNG Cartels, the sanctions of E.O. 14059 immediately, and without notice, block all Juárez, Sinaloa, and CJNG Cartel property and interests in property upon its entry into the United States or upon the moment it is controlled or possessed by a United States person.[17]

The blocked assets here were belong to the Ying Sun Criminal Money Laundering organization, and Ying Sun individually, who for approximately a year-and-one-half in the operation of a money laundering organization "throughout the United States that received millions of dollars in narcotics trafficking proceeds and laundered it on behalf of **Mexican drug cartels** and drug trafficking organizations based throughout the United States in at least 23 states."[18] These states included, "Arizona, California, Georgia, Maryland, New York, Ohio, Pennsylvania, and Tennessee."[19] The March 2021 publication of the DEA National Drug Threat Assessment, (NDTA) contained a map of the United States (Figure 58) Titled: Areas of Influence of Major Mexican Transnational Criminal Organizations by Individual Cartels.[20] This DEA work-product these states as areas dominated by the Sinaloa and CJNG Cartels:



---

[14] 31 C.F.R. § 598.301 (emphasis added).
[15] 31 C.F.R. §§ 598.202(a).
[16] 31 C.F.R. §§ 598.202(b)(1), and (2).
[17] E.O. 14059.
[18] *United States of America v. Ying Sun, et al.* Case No. 21-cr-343, Doc. No. 53 (Transcript), 5:14-6:18 (S.D.N.Y. Sep. 30, 2021) (emphasis added).
[19] *United States of America v. Ying Sun, et al.,* Case No. 21-cr-343, Doc. No. 2 (Indictment), (S.D.N.Y. May 24, 2021). Hereinafter referred to as the "Indictment".
[20] Drug Enforcement Administration, *2020 National Drug Threat Assessment*, (March 2021), available at https://www.dea.gov/documents/2021/03/02/2020-national-drug-threat-assessment.

The Government further alleges that the Specified Unlawful Act ("SUA") for the Conspiracy to Commit Money Laundering charge is that the the Ying Sun Criminal Money Laundering organization, and Ying Sun individually, "kn[ew] that the property involved in certain financial transactions represent[ed] the proceeds of … narcotics distribution and the conspiracy to commit the same, in violation of Title 21, United States code, Sections 841 and 846", and that the Ying Sun Criminal Money Laundering organization, and Ying Sun individually, *knew* that these financial "transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i)."[21]

Furthermore, United States Attorney Audrey Strauss said that the Ying Sun Criminal Money Laundering organization, and Ying Sun individually, "facilitated drug traffickers by concealing millions of dollars of their ill-gotten profits. Our Office will continue to work closely with the DEA and our law enforcement partners to go after the money networks that are **necessary** to the operations of the international drug trade."[22] DEA Special Agent-in-Charge Ray Donovan said that money laundering organizations, such as Ying Sun's, "provide an invaluable service to traffickers, transferring their ill-gotten gains across the globe."[23] As such, the moment the Ying Sun Criminal Money Laundering organization, and Ying Sun individually, "received millions of dollars in narcotics trafficking proceeds and laundered [them] on behalf of Mexican drug cartels", the assets became "blocked assets" because the Ying Sun Criminal Money Laundering organization, and Ying Sun individually, engaged in either, or both, of the delineated prohibited transactions set forth in 31 C.F.R. §§ 598.202(b)(1), and (2). Therefore, the assets subject to this criminal forfeiture proceeding are, pursuant to the Kingpin Act and E.O. 14059, are "blocked assets" subject to TRIA attachment and execution.

The standard for agency or instrumentality determination is:

> Any Specially Designated Narcotics Trafficker, including all of its individual members, divisions and networks, that is *or was ever* involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, distribution of Juárez cartel illicit drugs, or that assisted [the Juárez, Sinaloa, or CJNG Cartel's] financial or money laundering network, because it was either:
>
> 1)   Materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of [the Juárez, Sinaloa, or CJNG Cartels]; and/or
>
> 2)   Owned, controlled, or directed by, or acting on behalf of, [the Juárez, Sinaloa, or CJNG Cartel's]; and/or
>
> 3)   Playing a significant role in [the Juárez, Sinaloa, or CJNG Cartel's] international narcotics trafficking.[24]

Petition Victims include herein the expert affidavit of Paul Craine as Exhibit C. It is Petitioner Victims' expert's opinion that amounts of money laundered by the Ying Sun Criminal Money Laundering organization, and Ying Sun individually, over $20 million and, the fact that it was acknowledged by the U.S Government that the money involved was proceeds of narcotics trafficking based on the charging of violation of 21 U.S.C. §§ 841 and 846 as the SUA for the money laundering conspiracy violation that the narcotics trafficking organization, or organizations, (Mexican Cartel(s)) involved had to have an incredible scope of operations to cover 23 different US states and generate over $20 Million dollars in approximately a year-and-a-half.[25] It is Petitioner Victims' expert's opinion that the Sinaloa and CJNG cartels possess such a scope and scale of operations.[26] As such, it is the opinion of Petitioner Victims' expert opinion that the Ying Sun Criminal Money Laundering organization, and Ying Sun individually, by and through providing financial support for or to the international narcotics trafficking activities of the Sinaloa and/or CJNG; and/or by being controlled, or directed by, or acting on behalf of, the Sinaloa or CJNG Cartels; and/or playing a significant

---

[21] Indictment at ¶ 5.
[22] United States Attorney's Office, Southern District of New York, Press Release, *7 Defendants in Nationwide Money Laundering Organization Charged for Laundering Over $28 Million for Drug Trafficking Organizations*, (July 21, 2021), available at https://www.justice.gov/usao-sdny/pr/7-defendants-nationwide-money-laundering-organization-charged-laundering-over-28.
[23] *Id.*
[24] *Id.* at 748, n.6.
[25] *See* Ex. C, Affidavit of Paul Craine at pp. 20-21.
[26] *Id.*

role in the Sinaloa and/or CJNG Cartel's international narcotics trafficking is an agency or instrumentality of the Sinaloa and/or CJNG Cartels.[27]

It is Petitioner Victims' expert's opinion that the extensive cooperation between the Juárez and Sinaloa Cartels is not limited to planning and execution of the attacks on November 4, 2019, that resulted in the massacre of Petitioner Victims.[28] The Juárez and Sinaloa Cartels knowingly utilize the same Chinese Money Laundering Organizations ("CMLOs"), such as Ying Sun's, to launder their narcotics proceeds. There are only a limited few CMLOs such as Ying Sun's capable of operating in over 23 states and handling over $20 million dollars. Therefore, it is Petitioner Victims' expert's opinion that the Juárez Cartel and its agencies or instrumentalities Sinaloa and CJNG Cartels simultaneously, knowingly, and explicitly utilize the same CMLOs, such as Ying Sun's, to launder and envelop their narcotics proceeds.[29]

Therefore, it is Petitioner Victims' expert's opinion that the Ying Sun Criminal Money Laundering organization, and Ying Sun individually, was operating in the United States as an Agency or Instrumentality of the Juárez Drug Cartel.[30]

As such, the June 13, 2023, Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment is invalid because the Petitioner Victims' legal right to the property subject to forfeiture herein vested in the Petitioner Victims, and/or their right was "superior to any right, title, or interest of the defendant, at a time prior to the commission of the acts which gave rise to the forfeiture of the property." 18 U.S.C. § 853(n)(6)(A). After Defendant's assets were seized, they should have been reported to OFAC as required by 31 C.F.R. § 501.603 and not subjected to this criminal forfeiture process unless, and until, the proper procedures were followed. Based upon Petitioner Victims' review of the record it does not appear that the proper procedures were followed.

Therefore, Petitioner Victims request this Court set a "hearing to adjudicate the validity of [their] alleged interest in the property", 21 U.S.C. §§ 853(n)(2), (4), amend the order of forfeiture, and prior to a hearing on this matter, order that Petitioner Victims be provided access, subject to appropriate confidentiality protections, to the evidence produced by the Government to the Defendants related to the Ying Sun's money laundering organization, the drug trafficking organizations for which the Defendants laundered funds, and all expert reports and other materials produced in the criminal case.[31]

**Please provide the total pecuniary loss claimed. This is the total amount you claim to have lost.**

$4,641,337,011.00, plus prejudgment interest on all economic and non-economic damages (including solatium damages) from November 4, 2019, through the date of final judgment at a rate of 6.5% per annum, non-compounding. The Court further awarded Petitioner Victims post-judgment interest to the final judgment amounts in the percentages permitted pursuant to 28 U.S.C. § 1961.

**If you have recovered any of your losses, please list the details below. If you have more than two sources of recovery, please print multiple copies of this table to submit with the petition.**

| SOURCE(S) OF RECOVERY (if applicable) | |
|---|---|
| **Source of Recovery 1**: | **Amount of Recovery**: |
| **Source of Recovery 2**: | **Amount of Recovery**: |

---

[27] *Id.* at pp. 20-22.

[28] *Id.* ¶ 49.

[29] *Id.* at p. 21-22.

[30] *Id.*

[31] Fed. R. Crim. Pro. 32.2(c)(1)(B); *See also*, *In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999) (Petitioner Victims have a First Amendment right to access judicial records filed in a criminal trial. This right is broad and includes access to documents submitted during the course of a criminal trial, plea and sentencing documents, and other pretrial proceedings and filings. The government can only withhold documents and evidence if doing so is necessitated by a compelling government interest, and narrowly tailored to serve that interest.); *U.S. v. Smith*, 985 F.Supp.2d 506, 517-18 (S.D.N.Y. 2013) (internal citations and quotations omitted) ("Apart from a constitutional right of access to court proceedings and documents, the Supreme Court has held that the public has a common law right to inspect and copy public records and documents, including judicial records and documents.").

**In the space below, please list any documents you are including in support of your victim petition.  If none are included, please explain why.**

Enclosed within this Petition submission is:

1) A copy of United States District Court, District of North Dakota judgment (Exhibit A);

2) A copy of the United States District Court, District of North Dakota Findings of Fact and Conclusions of Law (Exhibit B); and

3) The sworn affidavit of Paul Craine providing additional facts on the connection between the assets of Ying Sun and the loss suffered by Judgment Plaintiffs (Exhibit C).

## SECTION IV – INTEREST IN PROPERTY

*Provide additional information for the assets where you have identified yourself as the owner and/or lienholder. If you are petitioning for multiple assets and the responses are not the same for each asset, please print out multiple copies of this page to submit with the petition and indicate which assets apply to each page. If you have documentation that supports your interest in the petitioned assets (bill of sale, retail installment agreements, contracts, titles or mortgages) please include copies of the documents with the submission of the petition.*

| INTEREST IN PROPERTY INFORMATION ||
|---|---|
| **Asset ID** | **Asset Description** |
|  |  |
|  |  |

**In the space below, please explain why you have a valid, good faith, and legally recognizable interest in the asset(s) as an owner or lienholder**:

**Select the reason why you are petitioning for remission and/or mitigation of the asset(s)?**
- ☐  I am an innocent owner and I did not know of the conduct giving rise to the forfeiture OR I am an innocent owner and upon learning of the conduct giving rise to the forfeiture, I did all that reasonably could be expected under the circumstance to terminate such use of the property.
- ☐  I was a bona fide purchaser or seller of the forfeited property for value, AND I did not know and was without cause to believe that the property was subject to forfeiture at the time I acquired my interest in the property.
- ☐  None of the above. I am only seeking mitigation.

**In the space below, please explain the reason for filing a petition.**

**In the event that the ruling official determines that I do not qualify for remission of the property, I hereby request mitigation of the forfeiture to avoid extreme hardship.**
 ☐ YES     ☐ NO

**In support of my request, I would like the ruling official to consider the following extenuating circumstances**:

**In the space below, please list any documents you are including in support of your interest in the asset(s). If none are included, please explain why.**

## SECTION V – NET EQUITY WORKSHEET

*Complete the table below for each asset where you are a lienholder. If you are a lienholder for multiple assets, please print out multiple copies of this page to submit with the petition.*

| LOAN / ASSET INFORMATION ||
|---|---|
| **Asset ID**: | **Asset Description**: | **Seizure Date**: |
| **Purchaser**: | **Co-Signer** (optional): |
| **Loan Date**: | **Date of Last payment**: |
| **Amount Financed**: $ | **Date Lien Perfected with State**: |
| **Original Term of Loan** (months): | **Day of the Month Each Payment is Due**: |
| **Contract Rate of Interest**: % | **Total Amount Paid to Lienholder After Seizure**: $ |
| **Unpaid Principal Due at Seizure**: $ | **Unpaid Interest Due at Seizure**: $ |
| **Dealer's Reserve**: $ | **Taxes, Transfer Fees, etc.**: $ |
| **Insurance Costs**: $ | **Duration** (months): |
| **Service Contract Costs**: $ | **Duration** (months): |
| **Extended Warranty Costs**: $ | **Duration** (months): |
| **Miscellaneous Costs**: $ ||
| **Provide Details** (for miscellaneous costs): ||
| INFORMATION FURNISHED BY ||
| **Contact Name**: (Last, First) | **Business Name**: |
| **Address**: (Include Street, City, State, and Zip Code) ||
| **Phone**: (optional) | **Email**: (optional) |

\* *Copies of your Net Equity assertions, such as bills of sale, retail installment agreements, contracts, certificates of title, payment history, security agreements, loan applications, or mortgages, which support the amount claimed as unpaid principal, must be attached to this report as an attachment.*

  **In the space below, please list any documents you are including in support of this Net Equity Worksheet. If none are included, please explain why.**

## SECTION VI – RECOVERY OF LOSS

*Complete this section for the assets where you have identified yourself as the owner and/or lienholder <u>and</u> you have recovered all or a portion of your losses either via an insurance claim and/or via some other source of recovery. If you have more recovery of loss information than may fit on this page, print out multiple copies of this page to submit with the petition and indicate which assets apply to each page. If you have not received any recovery of your losses, then leave this section blank.*

| RECOVERY OF LOSS INFORMATION ||
|---|---|
| **Asset ID** | **Asset Description** |
|  |  |
|  |  |

| INSURANCE CLAIM INFORMATION (if applicable) ||
|---|---|
| **Name of Insured**: (Last, First) ||
| **Policy Number**: | **Claim Number**: |
| **Name of Insurance Company**: | **Name of Insurance Agent**: (Last, First) |
| **Insurance Company Address**: (Include Street, City, State, and Zip Code) ||
| **Phone**: (optional) | **Email**: (optional) |
| **Have you received compensation from the insurance company?** <br> ☐ YES   ☐ NO | **Amount of Compensation**: |

**If other sources of recovery exist (e.g., restitution, returns on investment or other settlements), please list and describe the details below.**

| OTHER SOURCE(S) OF RECOVERY (if applicable) ||
|---|---|
| **Source of Recovery 1**: | **Amount of Recovery**: |
| **Source of Recovery 2**: | **Amount of Recovery**: |

**In the space below, please list any documents you are including in support of your recovery of loss. If none are included, please explain why.**

## SECTION VII – DECLARATION AND REPRESENTATION

*The following declaration should be completed by the petitioner. If the petitioner is represented by an attorney, the attorney may complete the declaration as long as the petitioner completes the sworn notice of representation.*

I attest and declare under penalty of perjury that my petition is not frivolous and the information provided in support of my petition is true and correct to the best of my knowledge and belief.

_____ Signature: *Adam Mitchell*

Printed Name: Samuel Mitchell

Date: 12/27/23

### Sworn Notice of Representation

*This section must be completed only by petitioners who are represented by an attorney and whose attorney has executed the declaration provided above.*

I have retained the above-named attorney who has authority to represent me in this matter. I have fully reviewed the foregoing petition and found that its contents are truthful and accurate in every respect. I declare under penalty of perjury that the foregoing information is true and correct.

Signature: *Adrian Jones*

Printed Name: Adriana Jones

Date: 12/27/23

A petition containing false information may subject the petitioner to criminal prosecution under Title 18 United States Code Section 1001 and Title 18 United States Code Section 1621.