UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

           :

UNITED STATES OF AMERICA

           :

      - v. -

           :     21 Cr. 343 (SHS)

YING SUN,

           :

         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   :

ADRIANA JONES, *et al.*,        :

         Petitioners.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS PETITIONERS' FIRST AMENDED PETITION

DAMIAN WILLIAMS
Attorney for the United States
Southern District of New York

Tara La Morte
Matthew Shahabian
Jonathan Bodansky
Assistant United States Attorneys
   - *Of Counsel* -

# TABLE OF CONTENTS

I      PRELIMINARY STATEMENT .............................................................................. 1

II.    BACKGROUND ................................................................................................. 1

    A.   Criminal Proceedings ................................................................................. 1

        1.   The Indictment and the Indictment Assets…………………………………1

        2.   The Preliminary Order of Forfeiture and the Forfeiture Assets……………………3

    B.   Petitioners' Amended Omnibus Petition ........................................................ 4

        1.   The First Petition………………………………………………..…………… 4

        2.   The Amended Omnibus Petition……………………….…………………...5

III.   ARGUMENT ..................................................................................................... 7

    A.   Applicable Law .......................................................................................... 7

        1.   Motion to Dismiss ................................................................................. 7

        2.   Constitutional and Statutory Standing ................................................. 10

    B.   Petitioners Have Failed to Assert a Colorable Interest in the Forfeiture Assets; Rather, They Are General Creditors Who Have Not Executed Their Judgment, and Therefore Lack Constitutional and Statutory Standing ................................................... 14

        1.   Petitioners Do Not Assert a Colorable Interest in the Forfeiture Assets and Thus Fail to Satisfy Article III Standing ........................................................ 14

        2.   Without Execution, Petitioners Have No Legal Interest in the Forfeiture Assets Sufficient to Establish Statutory Standing ............................................... 16

        3.   Petitioners' Reliance on the Terrorism Risk Insurance Act of 2002 ("TRIA") Does Not Otherwise Confer Standing ............................................................ 18

    C.   Even Assuming Petitioners Had Standing, the Amended Petition Should Be Dismissed Pursuant to Rule 12(b)(6) Because Petitioners' Interest in the Forfeiture Assets Is Not Superior to the Government's Interest Under 21 U.S.C. § 853(n)(6)(A) ..................... 22

IV.    CONCLUSION ................................................................................................ 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82 (2d Cir. 2006) ............... 10

*Ashcroft* v. *Iqbal,* 556 U.S. 662 (2009) ........................................................................................ 9

*Bacchus v. United States.,* 2014 WL 2558800 (E.D.N.Y. June 6, 2014) .................................... 11

*Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544 (2007) ......................................................................... 9

*DSI Assocs. LLC v. United States,* 496 F.3d 175 (2d Cir. 2007) ........................................... 13, 18

*Greenbaum v. Islamic Republic of Iran,* 67 F.4ᵗʰ 428 (D.C. Cir. 2023), *cert. denied sub nom.*
    *Greenbaum v. United States,* 144 S. Ct. 568 (2024). ........................................................... 24

*Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207 (2d Cir. 2014) .................................... 20

*Havlish v. Hegna,* 673 Fed. Appx. 34 (2d Cir. 2016)...............................................................21

*Heiser v. Islamic Rep. of Iran,* 735 F.3d 934 (D.C. Cir. 2013)................................................. 25

*In re 650 Fifth Ave. & Related Properties,* No. 08 Civ. 10934 (LAP), 2021 WL 1226594
    (S.D.N.Y. Mar. 31, 2021), *aff'd sub nom. Levin v. Miller,* No. 21-1116, 2022 WL 17574574
    (2d Cir. Dec. 12, 2022) ......................................................................................................... 25

*In re 650 Fifth Ave. and Related Properties,* 581 Fed. Appx. 61 (2d Cir. 2014) ............ 10, 11, 16

*In re Ideal Mortgage Bankers, Ltd.*, 539 B.R. 409 (Bankr. E.D.N.Y. 2015), *aff'd sub nom. Holzer*
    *v. Barnard,* No. 15 Civ. 6277 (JFB), 2016 WL 4046767 (E.D.N.Y. July 27, 2016)............... 21

*Levin v. JPMorgan Chase Bank, N.A.*, 751 F. App'x 143 (2d Cir. 2018) .................................. 20

*Levin v. United States,* 774 F. App'x 49 (2d Cir. 2019).......................................................... 25

*Levinson v. Kuwait Fin. House (Malaysia) Berhad,* 44 F.4th 91 (2d. Cir. 2022)........................ 20

*Lexmark Int'l, Inc. v. Static Control Components,* 572 U.S. 118 (2014)............................... 10

*Liu v. Democratic Nat'l Comm.*, No. 21-3021, 2022 WL 4372587 (2d Cir. Sept. 22, 2022)....... 11

*Luis v. United States,* 578 U.S. 5 (2016)................................................................................. 23

*Lujan v. Defs. of Wildlife,* 504 U.S. 555 (1992) ...................................................................... 10

*Makarova v. United States,* 201 F.3d 110 (2d Cir. 2000)............................................................ 8

*Mazzocchi v. Windsor Owners Corp.*, No. 11 Civ. 7913 (AT), 2013 WL 5295089 (S.D.N.Y.
    Sept. 17, 2013)......................................................................................................................... 8

*Miller v. Cartel,* No. 1:20-CV-00132, 2022 WL 2286952 (D.N.D. June 24, 2022) ..................... 4

*Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18 (2d Cir. 2014) ........................... 16

*Pacheco v. Serendensky,* 393 F.3d 348 (2d Cir. 2004)........................................................ 8, 22

*Peacock v. Thomas,* 516 U.S. 349 (1996)................................................................................ 16

*Rothstein v. UBS AG,* 708 F.3d 82 (2d Cir. 2013 ..................................................................... 8

*Selevan v. N.Y. Thruway Auth.,* 584 F.3d 82 (2d Cir. 2009)....................................................... 8

*United States v. $133,420.00 in U.S. Currency,* 672 F.3d 629 (9th Cir. 2012) .......................... 11

*United States v. Agnello,* 344 F. Supp. 2d 360 (E.D.N.Y. 2004)............................................... 13

*United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d. 191 (D.D.C. 2011)
    ................................................................................................................................................. 13

*United States v. Approximately $252,140.00 in US Currency,* 532 F. Supp. 3d 334 (W.D.N.C.
    2021) ..................................................................................................................................... 11

*United States v. BCCI Holdings (Luxembourg) S.A.,* 919 F.Supp. 31 (D.D.C. 1996) ................. 9

*United States v. Butt,* 930 F.3d 410 (5th Cir. 2019)................................................................... 13

*United States v. Cambio Exacto, S.A.,* 166 F.3d 522 (2d Cir. 1999) ............................ 10, 11, 15

*United States v. Daugerdas,* 892 F.3d 545 (2d Cir. 2018)......................................................... 23

*United States v. Dreier*, No. 09 Cr. 085 (JSR), 2010 WL 1223087 (S.D.N.Y. Mar. 24, 2010) ..... 9

*United States v. Egan*, No. 10 Cr. 191(JFK), 2011 WL 798852 (S.D.N.Y. March 7, 2011) ......... 9

*United States v. Emor*, Cr. No. 10-0298 (PLF), 2013 WL 3005366 (D.D.C. June 18, 2013) ........ 9

*United States v. Hiller*, No. 07-CR-0568 (JS), 2023 WL 7924180 (E.D.N.Y. Nov. 16, 2023) ... 24

*United States v. Holy Land Found. For Relief & Dev.,* 722 F.3d 677 (5th Cir. 2013) ................ 26

*United States v. Madoff,* 09 Cr. 213 (DC), 2012 WL 1142292 (S.D.N.Y. Apr. 3, 2012) 12, 17, 18

*United States v. McCorkle,* 143 F. Supp. 2d 1311 (M.D. Fla. 2000) .................................. 12, 13

*United States v. Nektalov*, 440 F. Supp. 2d  287 (S.D.N.Y. 2006) .......................................... 8

*United States v. Rahmankulov*, No. 20-CR-653 (RA), 2024 WL 68419 (S.D.N.Y. Jan. 5, 2024)
...................................................................................................................................... 10, 14

*United States v. Ribadeneira*, 105 F.3d 833 (2d Cir. 1997) ...................... 11, 12, 1, 187

*United States v. Salti*, 579 F.3d 656 (6th Cir. 2009) ..................................................................... 9

*United States v. Schwimmer,* 968 F.2d 1570 (2d Cir. 1992) ..................................................... 12

*United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121 (E.D.N.Y. 2006) ............................. 24

*United States v. Watkins*, 320 F.3d 1279 (11th Cir. 2003) .............................................. 13, 17, 18

*United States v. Watts,* 786 F.3d 152 (2d Cir. 2015) ......................................................... 12, 23

*United States v. White*, 675 F.3d 1073 (8th Cir. 2012) .................................................. 9, 13, 17, 18

## Federal Statutes

18 U.S.C. § 371 ............................................................................................................................. 2

18 U.S.C. § 982(a)(1) ................................................................................................................... 2

18 U.S.C. § 982(b)(1) ................................................................................................................. 10

18 U.S.C. § 1956(h) .................................................................................................................... 1,2

18 U.S.C. § 2333 ...................................................................................................................... 4, 19

21 U.S.C. § 853 .................................................................................................................. 1,16, 26

21 U.S.C. §853(c) ....................................................................................................................... 23

21 U.S.C. § 853(n) ..................................................................................................................... 5, 7

21 U.S.C. § 853(n)(2) ................................................................................................................. 5, 8

21 U.S.C. § 853(n)(3) ..................................................................................................................... 5

21 U.S.C. § 853(n)(6) ............................................................................................................ 6, 8, 22

21 U.S.C. § 853(n)(6)(A) .............................................................................. 5, 12, 22, 23, 24

21 U.S.C. § 1904(b) .................................................................................................................... 18

28 U.S.C. § 1963 ..................................................................................................................... 16, 17

Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§ 1901-1908 ...................................... 18

Federal Anti-Terrorism Act, 18 U.S.C. §§ 2331-2339D .............................................................. 19

International Emergency Economic Powers Act, 50 U.S.C. § 1701, *et seq.* ............................... 18

Terrorism Risk Insurance Act, Pub. L. No. 107–297, title II (as codified at 28 U.S.C. § 1610
note) (2002), as amended (to add reference to section 1605A) by Iran Threat Reduction and
Syria Human Rights Act of 2012, Pub. L. No. 112–158 (2012) .................................. 18, 19, 20

## State Statutes

North Dakota Century Code, 28-21-06…………………………………………………………….16

## Rules

Fed. R. Civ. P. 69 ................................................................................................................ 16, 20,21

Fed. R. Civ. P. 12 .................................................................................. 1, 8, 21, 27
Fed. R. Crim. P. 32.2(c)(1) ............................................................................. 4, 6
Fed. R. Crim. P. 32.2(c)(1)(A)…………………………………………………………….8

**Regulations**

28 C.F.R. § 9.4 ................................................................................................... 5
31 C.F.R. Part 598 …………………………………………………………………… 18

**Other Authorities**

Executive Order 14059 (December 15, 2021) ............................................................ 5
Statement on Presidential Designation of Foreign Narcotics Kingpins (June 18, 2004)………...18
148 Cong. Rec. S11524 (November 19, 2002)…………………………………………..25

# I.  PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion to dismiss the December 29, 2023 third-party Ancillary Amended Omnibus Petition (Dkt. No. 265) (the "Amended Petition") filed by petitioner Adriana Jones on behalf of fifty-six judgment creditors of the Juárez Cartel (the "Petitioners").  The Petitioners claim an interest in currency totalling $3,322,452.41 seized from participants in a money laundering operation and subject to forfeiture to the United States as property involved in a conspiracy to launder drug proceeds.

As set forth below, Petitioners have not asserted, and indeed cannot assert, that any of them had, at any time, a legal interest in the specific funds subject to forfeiture.  Petitioners therefore lack Article III standing, as well as statutory standing under Title 21, United States Code, Section 853, to assert their claims in this ancillary proceeding.  Even assuming Petitioners did have standing, however, the Amended Petition would fail on the merits, since any arguable interest the Petitioners could have in the subject funds would have vested only *after* the Government's interest vested, and the Petitioners are not otherwise bona fide purchasers for value. Therefore, the Amended Petition fails for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative, fails to state a claim under Rule 12(b)(6).

# II.  BACKGROUND

## A.  Criminal Proceedings

### 1.  The Indictment and the Indictment Assets

On or about May 24, 2021, Ying Sun (the "Defendant"), along with others, was charged in a two-count sealed Indictment, 21 Cr. 343 (SHS) (Dkt. 2) (the "Indictment"), with conspiracy to commit money laundering in violation of Title 18, United States Code, Section

1956(h) (Count One), and conspiracy to operate an unlicensed money transmitting business in violation of Title 18, United States Code, Section 371 (Count Two) for criminal conduct occurring from at least November 2019 through at least May 2021.

During the couse of the Government's investigation, the Government learned that the Defendant was a member of a California-based money laundering organization ("MLO") that laundered funds nationwide for various drug trafficking organizations. The Drug Enforcement Administration ("DEA") observed members of the MLO engage in approximately 95 different money pickups and/or drops of bulk cash, cash that DEA agents then observed MLO members deposit into the financial system and subsequently transfer to different accounts. Gov't Sentencing Submission at 1. (Dkt. 219) (citing PSR).

The Indictment included a forfeiture allegation as to Counts One and Two, seeking to forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in the commission of the charged offenses, any property traceable to such property, and the following specific property, which was seized from various individuals and stash houses involved in the MLO:

    a.   $153,731 in United States currency seized from inside 144-20 38th Avenue, Queens, New York on or about April 10, 2020;

    b.   $60,000 in United States currency seized from an individual in front of 144-20 38th Avenue, Queens, New York on or about April 10, 2020;

    c.   $300,020 in United States currency seized from an individual at the intersection of Bowne Street and Roosevelt Avenue in Queens, New York on or about April 10, 2020;

    d.   $2,726,075 in United States currency seized inside 461 Southard Street, Trenton, New Jersey on or about April 16, 2020; and

    e.   $41,633 in United States currency seized inside 461 Southard Street, Trenton, New Jersey on or about April 16, 2020.

(a. through e., collectively, the "Indictment Property").

<h2 style="text-align:center">2.      The Preliminary Order of Forfeiture and the Forfeiture Assets</h2>

On or about June 13, 2023, the Defendant pled guilty to Count One of the Indictment. Concurrently, the Court entered a Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (Dkt. 221) (the "Preliminary Forfeiture Order"), which (i) imposed a forfeiture money judgment against the Defendant in the amount of $20,896,774, representing the property involved in the money laundering conspiracy, and (ii) forfeited all of the Defendant's right, title and interest in the Indictment Property, as well as $40,993.41 from Citibank account 42028669184 held in the name of "Fangrui Cai Irrevocable Trust dated 3/12/2020" seized by the Government on or about August 16, 2021 (the "Trust Currency", and together with the Indictment Property, the "Forfeiture Assets").[1]

The Forfeiture Assets total $3,322,452.41 and are currently held by the United States Marshals Service in the Seized Assets Deposit Fund pending resolution of this forfeiture proceeding.

---

[1] The Preliminary Forfeiture Order also forfeited the Defendant's right, title and interest in certain shares held in Citibank account C12093214 in the name of "Fangrui Cai Irrevocable Trust dated 3/12/2020" (the "Trust Shares"). However, pursuant to the Stipulation and Order entered by the Court on December 22, 2023 (Dkt. 263), the Government agreed not to seek final forfeiture of the Trust Shares provided claimants make two cash payments to the Government against the Defendant's Money Judgment. The claimants made the first payment on or around January 25, 2024, and the second payment is due no later than June 30, 2024. As such, any interest asserted by the Petitioners in the Trust Shares in this proceeding will become moot if and when the second payment is made.

**B.** **Petitioners' Amended Omnibus Petition**

1. **The First Petition**

On or about August 11, 2023, petitioner Adriana Jones filed a petition (the "Petition") on behalf of 46 unidentified[2] judgment creditors (the "Petitioners") asserting an interest as a victim in "$20,896,774.00[3] in U.S. Currency, and all of defendant's right, title and interest in the Specific Property." Petition at 2, Dkt. 234-1. The Petition set forth how the murder of three American women and fourteen children in Mexico by members of the Juárez Cartel resulted in a civil judgment on June 24, 2022 against the Cartel and in favor of those victims' family members pursuant to the civil remedies provision of the Federal Anti-Terrorism Act, codified at Title 18, United States Code, Section 2333. *See Miller v. Cartel,* No. 1:20-CV-00132, 2022 WL 2286952 (D.N.D. June 24, 2022) (the "Civil Judgment"). The Petition further alleged that (i) Petitioners had an expert opinion explaining that the "Cartel Jalisco Nueva Generacion and Sinaloa Cartels work together with the Juárez Cartel to launder their illicit monies . . ."; (ii) Petitioners' "legal right" vested on November 4, 2019 – the day their family members were

---

[2] The 46 judgment creditors are not named in the Petition. However, the Petition attaches the Judgment in a Civil Case issued on June 24, 2022, by the United States District Court for the District of North Dakota in *Miller v. Cartel,* No. 1:20-CV-00132, 2022 WL 2286952 (D.N.D. June 24, 2022) (the "Civil Judgment"), which further attaches as Exhibit 1 a list of the 56 plaintiffs from that case. Ostensibly these 56 plaintiffs are the intended Petitioners, and the reference to 46 rather than 56 was a typographical error. Therefore, in this Motion "the Petitioners" refers both to the "46" petitioners on whose behalf Adriana Jones filed the August 11, 2023 petition and to the 56 petitioners on whose behalf Adriana Jones subsequently filed the Amended Omnibus Petition that is the subject of this Motion to Dismiss.

[3] As is explained further below, the amount $20,896,774 represents the forfeiture money judgment imposed by the Court against Defendant. Pursuant to Federal Rule of Criminal Procedure 32.2(c)(1), no ancillary proceeding is required to the extent forfeiture consists of a money judgment. Therefore, Defendant's money judgment is not subject to a third-party claim in this ancillary forfeiture proceeding.

murdered; (iii) Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA") provided the right to execute or attach their judgment against the assets of the Juárez Cartel or the assets of any agency or instrumentality of the Cartel; and (iv) therefore all "legal right to the property subject to forfeiture herein vested in the Petitioner Victims" pursuant to Title 18, United States Code, Section 853(n)(6)(A). Petition at 3.

On November 14, 2023, Petitioners requested an extension of the filing deadline set forth in 21 U.S.C. § 853(n)(2) to file an amended petition, to which the Government agreed. The Amended Omnibus Petition followed.

### 2. The Amended Omnibus Petition

On December 29, 2023, Adriana Jones timely filed an Ancillary Amended Omnibus Petition ("Amended Petition")[4] on behalf of 56 judgment creditors.[5] Amended Petition at 1, Dkt.

---

[4] The Amended Petition presents simultaneously as a petition for remission pursuant to Title 28, Code of Federal Regulations, Section 9.4, and as a petition for a hearing to amend a preliminary order of forfeiture pursuant to Title 21, United States Code, Section 853(n). A petition for remission is not a cognizable claim in this proceeding. Even when a victim cannot assert a legal interest in forfeitable property as required for standing under 21 U.S.C. § 853(n)(2),the victim may be able to obtain recovery through remission. If the victim meets all requirements for that process, the Government will either (i) pay the victim petitioner from the proceeds of the asset or (ii) return the asset. Petitions for remission of forfeiture are considered by the Chief of the Money Laundering and Asset Forfeiture Section in the Department of Justice *after* an asset has been forfeited to the United States in a judicial proceeding. By contrast, a petition filed with the court in an ancillary forfeiture proceeding is an assertion of petitioner's *legal* interest in property and a request that the court amend the preliminary order of forfeiture in light of petitioner's alleged property interest. Given the posture of this case and Petitioners' assertion of a legal interest, the Government construes the Amended Petition as an assertion of a legal interest in the Forfeiture Assets under 21 U.S.C. § 853(n), and the Court should not adjudicate the alternative remission claim.

[5] Title 21, United States Code, Section 853(n)(3) requires that all petitions be signed by a petitioner under penalty of perjury. As described in the Government's letter to the Court dated February 14, 2024, the Government agreed to allow Adriana Jones to proceed as the only petitioner on behalf of all 56 Petitioners for the sake of economy and efficiency because the Government believes all Petitioners are similarly situated and lack standing. At that time, however, the Government was

265-1. Like the Petition, the Amended Petition alleges an interest in "$20,896,774.00 in U.S. Currency, and all of defendant's right, title, and interest in the Specific Property," listed in the Preliminary Forfeiture Order. While the Amended Petition purports to claim an interest in "$20,896,774.00 in U.S. Currency," as described above, no such asset exists. Rather, that number is a forfeiture money judgment imposed by the Court on the Defendant and represents proceeds of the crime for which Defendant is liable, but which in large part, with the exception of the Forfeiture Assets, cannot be located.[6] Because the Forfeiture Assets, totaling $3,322,452.41 in seized United States currency and funds are the only assets at issue in this ancillary proceeding, the Government necessarily construes the Amended Petition as claiming a legal interest in those Forfeiture Assets alone.

While the Amended Petition provides additional legal argument, the fundamental assertions grounding Petitioners' alleged interest in the Forfeiture Assets are identical to those asserted in the Petition: (i) on November 4, 2019, Petitioners' family members were murdered in Sonora Mexico by members of the Juárez Cartel and its armed wing La Línea; (ii) Petitioners' "legal right" vested on November 4, 2019, the date of the murders; (iii) the North Dakota District Court entered the Civil Judgment against the Juárez Cartel in favor of Petitioners on June 24, 2022; (iv) Section 201(a) of TRIA gives Petitioners the right to execute or attach the Civil Judgment

---

unaware that Petitioners were intending to (and ultimately did) file similar petitions in other federal districts. Once the Government became aware of this fact, the Government informed Petitioners that they may not rely on or cite the Government's agreement in this case as precedent for allowing them to circumvent the statutory command of 21 U.S.C. § 853(n)(6) in other cases. Had the Government been aware that Petitioners were filing claims in ancillary proceedings nationwide, it would not have agreed to waive this statutory pleading requirement. Dkt. 285.

[6] Again, Federal Rule of Civil Procedure 32.2(c)(1) specifically provides that no ancillary proceeding is required to the extent forfeiture consists of a money judgment.

"against the blocked assets of the [civil] defendant (Juárez Cartel) and/or the assets of *any* agency

or instrumentality of the Juárez Cartel" including the Defendant Ying Sun; (v) Petitioners' expert

opines that Ying Sun was operating as an agent or instrumentality of the Juárez Cartel; (vi) certain

assets of Defendant Ying Sun were blocked pursuant to Section 805(b) of the Foreign Narcotics

Kingpin Designation Act; and therefore (vii) Petitioners' "legal right to the property subject to

forfeiture herein vested in the [Petitioners] and/or their right was 'superior to any right, title, or

interest of the defendant, at a time prior to the commission of the acts which gave rise to the

forfeiture of the property.'" Amended Petition at 3, 5-7.

Most significantly, the Amended Petition does not allege that Petitioners attached

their Civil Judgment to the Forfeiture Assets because Petitioners obtained no such attachment.

As set forth below, this alone is fatal to Petitioners' claim.[7]

### III. ARGUMENT

#### A. Applicable Law

##### 1. Motion to Dismiss

After entry of a preliminary order determining that property is subject to criminal

forfeiture, Title 21, United States Code, Section 853(n) provides for an ancillary proceeding in

which a third-party may "petition the court for a hearing to adjudicate the validity of his alleged

---

[7] Notably, the Amended Petition also fails to list or identify the specific assets in which Petitioners assert an interest, as required by Title 21, United States Code, Section 853(n), but contains only the conclusory assertion that "the assets subject to this criminal forfeiture proceeding are, pursuant to the Kingpin Act and E.O. 14059, are [sic] 'blocked assets' subject to TRIA attachment and execution." Amended Petition at 6. Petitioners' failure to specifically identify the assets in which they assert an interest also compels dismissal of the Amended Petition. However, as Petitioners' lack of standing cannot be remedied through further amendment, the Court should dismiss on that basis.

interest in property" subject to criminal forfeiture. 21 U.S.C. § 853(n)(2); *see Pacheco* v. *Serendensky*, 393 F.3d 348, 351 (2d Cir. 2004). Rule 32.2(c)(1)(A) of the Federal Rules of Criminal Procedure authorizes the Government to move to dismiss a petition for "lack of standing, for failure to state a claim, or for any other lawful reason," and such motions are governed by the same standards applicable to motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b). *Pacheco*, 393 F.3d at 352. Under Rule 12(b)(1), a petition should be dismissed if the court lacks subject matter jurisdiction, and under Rule 12(b)(6), a petition should be dismissed if it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(1), (6). The burden is on the petitioner to establish an interest in the property, superior to the interest of the Government, by a preponderance of the evidence. *See* 21 U.S.C. § 853(n)(6); *see also United States* v. *Nektalov*, 440 F. Supp. 2d 287, 295 (S.D.N.Y. 2006), *aff'd sub nom.*, *E.J.D. Diamond Mfr. V. United States*, 273 F.App'x 65 (2d Cir. 2008).

Issues of standing are resolved pursuant to Rule 12(b)(1). "Motions to dismiss for lack of standing are decided under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Mazzocchi v. Windsor Owners Corp.*, No. 11 Civ. 7913 (AT), 2013 WL 5295089, at *4 (S.D.N.Y. Sept. 17, 2013) (citing *Rothstein v. UBS AG,* 708 F.3d 82, 90 (2d Cir. 2013) (quoting *Selevan v. N.Y. Thruway Auth.,* 584 F.3d 82, 88 (2d Cir. 2009)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

The facts set forth in a petition to adjudicate a third party's interest in property subject to forfeiture are assumed to be true. Fed. R. Crim. P. 32.2(c)(1)(A). *See United States* v. *Dreier*, No. 09 Cr. 085 (JSR), 2010 WL 1223087, at *2 (S.D.N.Y. Mar. 24, 2010). However,

motions to dismiss pursuant to Rule 12(b)(6) must be granted if the complaint does not "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). Thus, in order for a petition to survive dismissal a petitioner must "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Court need not accept as true a legal conclusion or a legal conclusion couched as a factual allegation. *See Iqbal*, 556 U.S. at 678.

In a criminal ancillary forfeiture proceeding, the court may dismiss the petition without holding a hearing if the petition fails to allege all elements necessary for recovery. *United States* v. *White*, 675 F.3d 1073, 1077 (8th Cir. 2012) (quoting *United States v. BCCI Holdings (Luxembourg) S.A. (Petitions of General Creditors)*, 919 F.Supp. 31, 36 (D.D.C. 1996); *United States* v. *Egan*, No. 10 Cr. 191(JFK), 2011 WL 798852, *2 (S.D.N.Y. March 7, 2011) (finding persuasive the Sixth Circuit's holding, in *United States* v. *Salti*, 579 F.3d 656, 664 (6th Cir. 2009), that "discovery and a hearing are not required prior to a ruling on a motion to dismiss" a third-party claimant's petition); *United States* v. *Emor*, Cr. No. 10-0298 (PLF), 2013 WL 3005366, at *4 (D.D.C. June 18, 2013), *aff'd in part, rev'd in part,* 785 F.3d 671 (D.C. Cir. 2015). The court may also dismiss if the petitioner could not prevail on the merits even if a hearing were held. *White*, 675 F.3d at 1081.

## 2. Constitutional and Statutory Standing

### a) *Third Parties Must Have Standing to Contest Forfeiture*

Title 21, United States Code, Section 853 governs criminal forfeiture proceedings. *See* 18 U.S.C. § 982(b)(1). To proceed in an ancillary forfeiture proceeding, a claimant must have standing under Article III of the Constitution ("constitutional standing") as well as standing under

Title 21, United States Codes, Section 853 ("statutory standing"). *See United States v. Cambio Exacto, S.A.,* 166 F.3d 522, 526 (2d Cir. 1999). Furthermore, "'[w]here [a] statutory standing issue is essentially the same as a merits issue,' the court must decide the constitutional standing issue first." *United States v. Rahmankulov*, No. 20-CR-653 (RA), 2024 WL 68419, at *2, n.2 (S.D.N.Y. Jan. 5, 2024) (quoting *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 87 (2d Cir. 2006)). Even in a criminal forfeiture ancillary proceeding, "constitutional 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III' of the Constitution." *See id.* at *2 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)).

### b) Article III Standing Requires an "Injury in Fact"

At the pleading stage, Article III constitutional standing requires a petitioner to plead plausible facts establishing that they "suffered or [are] imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan,* 504 U.S. at 560); *see also Cambio Exacto, S.A.*, 166 F.3d at 527 ("While ownership or possession of property may provide evidence of standing . . ., it is *injury* that is at the heart of the [Article III] standing question."). Significantly, while a claimant who is neither an owner nor a possessor of property may suffer an injury from forfeiture if the claimant has a "financial stake" in the property to be forfeited, "a party that holds no more than a claim against the owner or possessor lacks standing to challenge a property forfeiture." *In re 650 Fifth Ave. and Related Properties,* 581 Fed. Appx. 61, 62 (2d Cir. 2014) (citing *Cambio Exacto, S.A.,* 166 F.3d at 527-29; *see also United States. v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637-38 (9th Cir. 2012) ("Claimants in civil forfeiture actions can satisfy this test [for Article III standing] by showing that they have a 'colorable interest in the

10

property,' which includes an ownership interest or a possessory interest[.]" (citations omitted));
*United States v. Approximately $252,140.00 in US Currency*, 532 F. Supp. 3d 334, 338 (W.D.N.C. 2021) ("In the Fourth Circuit, a forfeiture claimant has Article III standing to challenge a forfeiture only if he possesses an 'ownership interest, a possessory interest, or a security interest in the specific property that is the subject of the forfeiture action.'") (citation omitted); *Bacchus v. United States*, 2014 WL 2558800, at *3 (E.D.N.Y. June 6, 2014) ("It is widely held that a claimant has a facially colorable interest in the proceedings [adequate for Article III standing], if he or she can show some ownership or possessory interest in the specific property to be forfeited.").

Without an "injury in fact" to a plaintiff, a court lacks constitutional power to adjudicate the case and must dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1).  *See Liu v. Democratic Nat'l Comm.*, No. 21-3021, 2022 WL 4372587, at *2 (2d Cir. Sept. 22, 2022) (affirming district court's dismissal of action for lack of subject-matter jurisdiction where plaintiff "did not establish an injury in fact because his concerns were 'conjectural' or 'hypothetical.'").

### c) *Statutory Standing Requires a Legal Interest in the Subject Property*

In addition to constitutional standing, a petitioner seeking to challenge forfeiture in an ancillary forfeiture proceeding must also prove, by a preponderance of the evidence, that he has statutory standing, that is, a "legal right, title, or interest in the property."   Title 21, United States Code, Section 853(n)(6)(A); *see United States v. Watts,* 786 F.3d 152, 161 (2d Cir. 2015) (claimant "must demonstrate that he has a 'legal interest in [the forfeited] property.'" (citation omitted)); *see also United States* v. *Ribadeneira*, 105 F.3d 833, 835-6 (2d Cir. 1997).

The Second Circuit denies statutory standing under Section 853(n) to general creditors (also referred to as unsecured creditors). *United States* v. *Madoff*, 09 Cr. 213 (DC), 2012 WL 1142292, at *4 (S.D.N.Y. Apr. 3, 2012) ("[A] legal interest sufficient to establish a 'right, title or interest in the [forfeited] property' under § 853(n)(6), must be 'in a particular, specific asset, as opposed to a general interest in an entire forfeited estate or account'" (quoting *Ribadeneira*, 105 F.3d at 836.)) A general claim against the criminal defendant from whom forfeitable property was seized or a general claim against that defendant's assets as a whole is not sufficient to establish a valid legal interest in the specific property subject to forfeiture. *See Ribadeneira,* 105 F.3d at 835-36 (general creditors have no standing in an ancillary proceeding because they have no interest "in" specific forfeited property; section 853(n) requires petitioners to demonstrate "an interest in a *particular, specific asset*, as opposed to a general interest in an entire forfeited estate or account" (emphasis added)); *see also United States v. Schwimmer,* 968 F.2d 1570,1580-81 (2d Cir. 1992) (general creditors lack standing under 18 U.S.C. § 1963(1)(6)).

General creditors include those who hold a judgment against a relevant person or entity. For a general creditor to obtain a vested interest in specific property sufficient to confer standing, not only must the general creditor obtain a judgment against the debtor, but he must also have perfected a lien against the specific property, *i.e.*, secured the judgment against the property at issue. *Madoff,* 2012 WL 1142292, at *4 (emphasis added); *see also United States* v. *McCorkle*, 143 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) ("A general creditor has no 'vested' or 'superior' interest in particular assets forfeited unless he not only has secured a judgment against the debtor, but also has perfected a lien against the particular item.") (citation omitted); *United States* v. *Agnello*, 344 F. Supp. 2d 360, 364 (E.D.N.Y. 2004) ("A party's interest in property must be an interest in a particular, specific asset that has been ordered forfeited to the government . . .");

*United States* v. *All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d. 191, 199 (D.D.C. 2011) (holding an *in personam* judgment against participant company in criminal enterprise insufficient to confer ownership interest in specific property); *United States v. Watkins*, 320 F.3d 1279, 1283-84 (11th Cir. 2003) (unsecured creditors lack standing to contest the forfeiture in an ancillary proceeding because they have no interest in the particular assets subject to forfeiture); *United States v. White*, 675 F.3d at 1080-81 (without a secured interest in stock or its forfeiture proceeds, but merely a contractual interest in the forfeited proceeds, petitioner lacked standing to contest forfeiture). *Compare United States v. Butt*, 930 F.3d 410, 415 (5th Cir. 2019) (petitioner with a lien against electronic devices based on execution of a collateralized inventory loan with defendant was a secured creditor with standing in ancillary proceeding to contest forfeiture of the devices).

Put simply, general (*i.e.* unsecured) creditors of a defendant do not have standing under Section 853(n) to challenge the forfeiture of property. Without an interest in the actual property subject to forfeiture, a petitioner "does not meet the statutory requirements for initiating an ancillary proceeding under section 853(n)." *DSI Assocs. LLC v. United States,* 496 F.3d 175, 184 (2d Cir. 2007).

**B.** **Petitioners Have Failed to Assert a Colorable Interest in the Forfeiture Assets; Rather, They Are General Creditors Who Have Not Executed Their Judgment, and Therefore Lack Constitutional and Statutory Standing**

**1.** **Petitioners Do Not Assert a Colorable Interest in the Forfeiture Assets and Thus Fail to Satisfy Article III Standing**

While Petitioners have indisputably suffered loss from the actions of the Juárez Cartel (as recognized by the North Dakota District Court), that loss does not give rise to an "injury in fact" with respect to the Forfeiture Assets at issue in this proceeding. Petitioners do not claim

(nor could they) that the Forfeiture Assets are in the name of or in possession of the Juárez Cartel (or an agency or instrumentality of the Cartel). Rather, they assert that "the assets subject to this criminal forfeiture proceeding are, pursuant to the Kingpin Act and E.O. 14059, are [sic] 'blocked assets' subject to TRIA [Terrorism Risk Insurance Act] attachment and execution". (Amended Petition at 6).

This is not sufficient to demonstrate a colorable interest in the Forfeiture Assets. While it is true that blocked assets *of the Juárez Cartel* and its agencies and instrumentalities may be subject to execution pursuant to TRIA under certain circumstances, as stated above the Forfeiture Assets are not held in the name of the Cartel (or an agency or instrumentality of the Cartel), and Petitioners have not pled any facts to support their bald assertion that the Forfeiture Assets in fact belong to the Cartel or an agency or instrumentality thereof.

This Court's decision in *Rakhmankalov* is instructive. There, the petitioner sought to challenge the Government's forfeiture of funds seized from a bank account that was titled in the name of a corporation, asserting that he was the owner of the funds in fact. Judge Abrams dismissed his petition for lack of Article III standing, explaining that his allegations were insufficient to demonstrate a concrete interest in the funds. In particular, he had not alleged facts showing his relationship with the corporate account owner such that the forfeiture of the funds at issue would injure him, and thus failed to establish that he "suffered or [is] imminently threatened with" injury, leaving the Court without jurisdiction to adjudicate the validity of his alleged interest in the funds. *Rahmankulov*, 2024 WL 68419, at *3 (citations omitted).

In this case, Petitioners may suffer injury of constitutional magnitude only if the Forfeiture Assets in fact constitute assets "of" the Juárez Cartel or its agencies and instrumentalities, because only then might those assets be considered "blocked" and subject to

14

attachment by virtue of their Civil Judgment.[8]   Like the petitioner in *Rahmankulov*, however, Petitioners have simply stated in conclusory fashion that this is the case; they have pleaded no facts to support those conclusions, and thus have failed to show anything more than an inchoate financial interest in the Forfeiture Assets based solely upon their unexecuted Civil Judgment against the Juárez Cartel.   In this Circuit, it is clear that a petitioner's mere possession of a Judgment against the alleged owner of property subject to forfeiture does not constitute a constitutionally cognizable financial stake in the property subject to forfeiture.   *See In re 650 Fifth Ave. and Related Properties,* 581 Fed. Appx. at 62 (while a claimant who is neither an owner nor a possessor of property may suffer an injury from forfeiture if the claimant has a "'financial stake'" in the property being forfeited, "a party that holds no more than a claim against the owner or possessor lacks [Article III] standing to challenge a property forfeiture" (citing *Cambio Exacto*, 166 F.3d at 527-29)).   Because they have no concrete financial stake in the specific Forfeiture Assets themselves, Petitioners lack Article III standing to contest forfeiture here.

## 2. Without Execution, Petitioners Have No Legal Interest in the Forfeiture Assets Sufficient to Establish Statutory Standing

Even if Petitioners met their burden to establish Article III standing, they lack statutory standing, independently compelling dismissal of their Amended Petition.   As discussed above, it is well-established that general judgment creditors lack statutory standing to contest forfeiture, unless they first perfect a judgment lien by executing their judgment against the specific

---

[8] To be clear, the Government disputes that the Forfeiture Assets are property of the Juárez Cartel (or its agencies or instrumentalities) and constitute blocked assets.   However, as noted herein, the Court need not adjudicate these factual disputes to resolve this Motion.

property at issue.[9]   Here, Petitioners have failed to execute their Civil Judgment against the Forfeiture Assets, and therefore they also lack statutory standing under 21 U.S.C. § 853 to pursue the Amended Petition.

Federal courts, of course, have the authority to enforce their judgments.   *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996).   In particular, pursuant to Rule 69 of the Federal Rules of Civil Procedure, a district court's judgment against a defendant "is enforced by a writ of execution, unless the court directs otherwise.   The procedure on execution . . . must accord with the procedure of the state where the court is located …"   In other words, Rule "69(a)(1) provides for enforcement of judgments according to the practice and procedure of the state in which the district court is held."   *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 21 (2d Cir. 2014).   While the North Dakota District Court issued Petitioners' Civil Judgment, and so North Dakota state law may apply in the first instance to execution,[10] Title 28, United States Code, Section 1963 allows for registration of one district court's judgment for recovery of money or property in another district court, and a "judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." 21 U.S.C. § 1963.

Here, Petitioners registered their Civil Judgment with this District, and thus New

---

[9] Some courts have applied Article III standing principles in dismissing petitions of general creditors.   *See In re 650 Fifth Ave. and Related Properties,* 581 Fed. Appx. at 62.   Whether analyzed under the rubric of Article III or 21 U.S.C. § 853(n), the same result pertains:   standing is lacking and the petition must be dismissed.

[10] North Dakota state law provides that "execution may be issued by the clerk of court in which the judgment was entered to the sheriff of any county where the judgment is docketed." North Dakota Century Code, 28-21-05.

York Law applies to enforcement of the Judgment in this District. *Id.* In particular, as noted above, Petitioners obtained their Civil Judgment against the Juárez Cartel from the North Dakota District Court on June 24, 2022, approximately one to two years after the Government seized the Forfeiture Assets.[11] On June 13, 2023, the Government obtained the Preliminary Forfeiture Order, forfeiting the Defendant's interest in the Forfeiture Assets. Approximately three months later, on September 14, 2023, Petitioners, after filing their first Petition with this Court, filed in this District a Certification of Judgment from the Clerk of the North Dakota District Court. *See Howard J. Miller, et al v. Juarez Cartel,* 23 Misc. 00343 (VEC) (the "Attachment Action" at Dkt. 1). Only on January 2, 2024, after having already filed the Amended Petition with this Court, did Petitioners file an *ex parte* motion for writ of execution in the Attachment Action, which Judge Caproni denied without prejudice on January 5, 2024, noting in part that Petitioners had failed to address (or disclose) the petitions already filed in this forfeiture proceeding. (Attachment Action Dkt. 4). On February 9, 2024, Petitioners filed a noticed Motion for Order of Attachment, after which the Government moved to intervene. On March 4, 2024 the Court granted the Government's motion to intervene, and on March 7, 2024, Judge Caproni stayed the Attachment Action pending resolution of this forfeiture ancillary proceeding. (Attachment Action Dkts. 13 & 15)

Simply put, Petitioners have failed to date to successfully execute their Civil Judgment against the Forfeiture Assets, and therefore also lack statutory standing to contest their forfeiture in this ancillary proceeding. *See Ribadeneira*¸ 105 F.3d at 836-37; *Madoff,* 2012 WL 1142292, at *4-5; *Watkins*, 320 F.3d at 1283-84; *White*, 675 F.3d at 1080-81; *DSI Assocs. LLC,*

---

[11] The Indictment Property was seized in April 2020, and the Trust Currency was seized on or about August 16, 2021.

496 F.3d at 184.

### 3. Petitioners' Reliance on the Terrorism Risk Insurance Act of 2002 ("TRIA") Does Not Otherwise Confer Standing

As holders of the Civil Judgment against the Juárez Cartel, Petitioners claim that Section 201(a) of TRIA vested them with "legal right" to the Forfeiture Assets as of November 4, 2019, because the Defendant was operating as an agent of the Juárez Cartel and thus her assets, including the Forfeiture Assets, were blocked pursuant to Section 805(b) of the Foreign Narcotics Kingpin Designation Act.[12] As described below, Petitioners' assertion that they have obtained a legal interest in the Forfeiture Assets under TRIA itself is without merit.[13] TRIA is an execution statute. It does not itself create property rights or confer legal interests in any property, blocked or otherwise.

By way of background, over the years, Congress has implemented a series of laws

---

[12] The Foreign Narcotics Kingpin Designation Act, codified at Title 21, United States Code, Sections 1901-1908 (the "Kingpin Act"), blocks all property and interests in property subject to U.S. jurisdiction owned or controlled by significant foreign narcotics traffickers identified by the President. *See* 21 U.S.C. § 1904(b). The U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC") implemented the Kingpin Act by adopting the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. Part 598, pursuant to which any interests of a specially designated narcotics trafficker ("SDNTK") in property in the United States or held by U.S. persons is blocked. On June 1, 2004, the President identified the Carrillo Fuentes Organization (a/k/a/ CFO; a/k/a Juárez Cartel) as a SDNTK. Statement on Presidential Designation of Foreign Narcotics Kingpins (June 1, 2004). In addition, on December 15, 2021, pursuant to his authority under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, the President issued Executive Order 14059, "Imposing Sanctions on Foreign Persons Involved in the Global Illicit Drug Trade," which blocked property interests subject to U.S. jurisdiction of individuals and entities that the Secretary of the Treasury determines to have engaged in identified drug trafficking activities. That same day, OFAC designated the Juárez Cartel (a.k.a Cartel de Juarez; a/k/a Carrillo Fuentes Drug Trafficking Organization; a/k/a La Linea; a/k/a VCFO) under E.O. 14059.

[13] Petitioners' argument fails for multiple reasons, but for purposes of this motion, the Government focuses on the legal deficiencies.

to provide victims of terrorism the means to collect their judgments against foreign states. Section 201 of TRIA allows terrorism judgment creditors to attach certain blocked assets of terrorist parties, including certain foreign state sponsors of terrorism notwithstanding their foreign sovereign immunities. By its terms, the text of Section 201 exclusively pertains to making certain assets *available* for execution to satisfy terrorism-related judgments:

> Notwithstanding any other provision of law *** in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7) ***, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be *subject to* execution or attachment in aid of execution in order to satisfy such judgment ***.

TRIA § 201(a), Pub. L. No. 107–297, title II, §201(a), (b), (d) (as codified at 28 U.S.C. § 1610 note); 116 Stat. 2322, 2337-39 (2002), as amended (to add reference to section 1605A) by Iran Threat Reduction and Syria Human Rights Act of 2012, Pub. L. No. 112–158, title V, §502(e)(2), 126 Stat. 1214, 1260 (2012) (emphasis added).[14]

TRIA Section 201(a) provides generally that the "blocked assets" of a terrorist organization are subject to attachment by victims with a terrorism-related judgment "[n]otwithstanding any other provision of law[.]" TRIA § 201(a). This "notwithstanding" clause does not excuse TRIA claimants from the requirements of establishing a legal interest in blocked property or vitiate the rights of others, however, including the Government's forfeiture authorities.

---

[14] The Federal Anti-Terrorism Act, 18 U.S.C. § 2333(e), includes as blocked assets those seized or frozen under section 805(b) of the Foreign Narcotics Kingpin Designation Act. In addition, as the Cartel was designated in 2021 pursuant to the President's authority under the International Emergency Economic Powers Act, blocked assets of the Cartel (or its agencies and instrumentalities) are subject to execution under TRIA, assuming all conditions are met.

Rather, TRIA is an *execution* statute—it provides "*authorization* of the attachment of the property of terrorist parties and that of their agencies or instrumentalities to satisfy certain judgments issued against them." *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 211 (2d Cir. 2014) (emphasis added). It does not itself create property rights in the assets of terrorist parties. *See Levin v. JPMorgan Chase Bank, N.A.*, 751 F. App'x 143, 147 (2d Cir. 2018) ("Absent a federal definition of 'property' in either FSIA [Foreign Sovereign Immunities Act] or TRIA, we apply the 'general rule in this Circuit that when Congress has not created any new property rights, but 'merely attaches consequences, federally defined, to rights created under state law,' we must look to state law to define the 'rights the judgment debtor has in the property the creditor seeks to reach.'") (citations omitted). Indeed, TRIA, by its terms, does not even create any entitlement to execution; rather, it unlocks a judicial process that may, eventually, result in an entitlement to property. *Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 96, 97 (2d. Cir. 2022) ("TRIA itself, however, provides no procedures for enforcement. In seeking attachment or execution, therefore, a judgment holder must follow the procedures of state law and, to the extent it applies, federal law. . . . To be entitled to attachment or execution under TRIA, a plaintiff must first establish defendant's status as an agency or instrumentality. Put another way, before ordering assets to be seized under TRIA, a district court must make findings as to whether TRIA indeed permits those assets to be seized.").

As such, any such property rights that arise from a judgment, including a judgment against a terrorist party on a claim based upon an act of terrorism, must be accorded under state law. *See id.*; *see also* Fed. R. Civ. P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state

20

in which the court is located, but a federal statute governs to the extent it applies."). Significantly, the civil judgment itself does not automatically create property rights in the judgment debtor's property; rather, those property rights are created through judicial or other process (such as recording a judgment). In particular, in New York State, where Petitioners filed a Certification of Judgment, "the judgment itself does not give the creditor an interest in the judgment debtor's property, nor does it accord priority in any of the judgment debtor's property or income. The judgment creditor remains unsecured until either 'execution' is obtained on the judgment or a judgment lien against real property is obtained by recording the judgment in the county in which the judgment debtor owns real property." *In re Ideal Mortgage Bankers, Ltd.*, 539 B.R. 409, 427 (Bankr. E.D.N.Y. 2015), *aff'd sub nom. Holzer v. Barnard*, No. 15 Civ. 6277 (JFB), 2016 WL 4046767 (E.D.N.Y. July 27, 2016); *see Havlish v. Hegna*, 673 Fed. Appx. 34 (2d Cir. 2016) (judgment by victims of Iran sponsored terror did not confer ownership interest in Manhattan building subject to civil forfeiture; even assuming the victims acquired a legal interest by virtue of recordation of their judgment, it was lost as result of creditors' failure to renew their judgment lien in accordance with New York law, ten years after the filing of judgment roll).

As noted above, Petitioners in this case have not obtained a judgment lien against the Forfeiture Assets. Accordingly, they have no specific legal right or claim against the Forfeiture Assets of the Defendant (assuming *arguendo* the Defendant is, in fact, an agent or instrumentality of the Juárez Cartel).

For any or all these reasons, the Court should dismiss the Amended Petition pursuant to Rule 12(b)(1).

**C.** **Even Assuming Petitioners Had Standing, the Amended Petition Should Be Dismissed Pursuant to Rule 12(b)(6) Because Petitioners' Interest in the Forfeiture Assets Is Not Superior to the Government's Interest Under 21 U.S.C. § 853(n)(6)(A)**

If a third-party claimant successfully establishes a legal interest in the property subject to forfeiture, thereby satisfying standing requirements, Section 853(n)(6) provides two avenues for the claimant to prevail on the merits:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

Title 21, United States Code, Section 853(n)(6). Petitioners do not assert that they are bona fide purchasers for value. Therefore, to prevail, they "must . . . have an interest in the property that is superior to the criminal defendant's because it arose prior to 'the time of the commission of the acts [that] gave rise to the forfeiture,' 21 U.S.C. § 853(n)(6)(A) . . . ." *Pacheco*, 393 F.3d at 353.

With respect to superiority, under the "relation-back" doctrine, codified at Section 853(c), all right, title and interest in property subject to forfeiture vests in the United States (standing in the shoes of the defendant) "upon [the defendant's] commission of the act giving rise to forfeiture . . ." 21 U.S.C. §853(c); *see Watts*, 786 F.3d at 160. As such, "the government's interest in [crime proceeds] vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a

bona fide purchaser for value [which is not the case here])." *United States v. Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018); *see also Luis v. United States*, 578 U.S. 5, 16 (2016) ("[T]he Government, by application of § 853(c)'s relation-back provision, [becomes] something like a secured creditor with a lien on the defendant's tainted assets superior to that of most any other party.")

Consequently, the "relation-back" doctrine establishes that the Government's interest in forfeitable property is superior under Section 853(n)(6)(A) to that of any petitioners who acquired an interest in property *after* the commission of the crime. That includes the Petitioners here.

Even if the Petitioners were to obtain an attachment in the future, under the relation back doctrine, the United States' interest in the Forfeiture Assets vested at the time of the commission of the acts which gave rise to forfeiture. *See* 21 U.S.C. 853(c). Therefore, the Government's interest in the Forfeiture Assets vested when the money laundering offense occurred, which necessarily was prior to August 2021.[15] In contrast, while the Government does not concede that Petitioners have any legal interest in the Forfeiture Assets, the earliest Petitioners could have asserted any interest in the Forfeiture Assets would have been at the time of attachment of the Civil Judgment to the Forfeiture Assets, which—had there been such an attachment, which there has not been to the Government's knowledge—would necessarily have been after entry of the Civil Judgment on June 24, 2022.[16] *See United States v. Hiller*, No. 07-CR-0568 (JS), 2023

---

[15] Again, while the Indictment Property was seized in April 2020, and the Trust Currency, on or about August 16, 2021, the money laundering offense took place between 2019 and 2021.

[16] Petitioners assert their "legal right vested on on November 4, 2019," the date their family members were killed. Amended Petition at 3. However, for the reasons explained herein, it is

WL 7924180, at *5 (E.D.N.Y. Nov. 16, 2023) ("[A]ssuming, *arguendo*, [petitioner] had a perfected lien against [the forfeiture property], 'it comes too late in the day' to recover under Section 853(n)(6)(A), which protects the Government's interests, which interest vested when the asset became subject to forfeiture," (quoting *United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 125 (E.D.N.Y. 2006).)   Therefore, Petitioners' assertion of interest based on the Civil Judgment is too late to show a legal interest in the Forfeiture Assets sufficient to recover under 21 U.S.C. § 853(n)(6)(A).

Again, TRIA does not operate to usurp these principles. Significantly, TRIA's "notwithstanding" clause does not mean a party's right to attachment necessarily trumps the Government's interest in blocked assets.   *See Greenbaum v. Islamic Republic of Iran,* 67 F.4th 428, 434 (D.C. Cir. 2023), *cert. denied sub nom*. *Greenbaum v. United States,* 144 S. Ct. 568 (2024) (TRIA's "notwithstanding" clause does not clearly abrogate sovereign immunity to permit attachment of seized assets in possession of the U.S. government: "From start to finish, § 201(a) is about cases brought 'against a terrorist party.' There is no indication that it also covers execution against the United States.").   And here, the Forfeiture Assets are indisputably in the hands of the United States, as formalized by the Preliminary Forfeiture Order, which extinguished the Defendant's interest in the Forfeiture Assets in favor of the United States.

Nor does TRIA preempt the Government's interest in property subject to forfeiture. Addressing the application of TRIA in the context of civil forfeiture, the Second Circuit has held the "notwithstanding" clause does not "extend so far" as to allow petitioners to seek a distribution

---

well settled that legal interest in the Forfeiture Assets can only vest at time of execution of a judgment to those assets. *See Madoff,* 2012 WL 1142292, at *4.

of property seized by the Government for civil forfeiture. *Levin v. United States*, 774 F. App'x 49, 50 (2d Cir. 2019); *see also In re 650 Fifth Ave. & Related Properties*, No. 08 Civ. 10934 (LAP), 2021 WL 1226594, at *5 (S.D.N.Y. Mar. 31, 2021), *aff'd sub nom. Levin v. Miller*, No. 21-1116, 2022 WL 17574574 (2d Cir. Dec. 12, 2022) (holding that although forfeiture would render property unavailable for execution by the plaintiff under TRIA, "it does not follow that TRIA's 'notwithstanding' clause trumps the Government's ability to effect forfeiture here.").

        Finally, by operation of the Preliminary Forfeiture Order, to the extent the Forfeiture Assets were ever "blocked" property subject to attachment under TRIA, that is no longer the case. Even assuming for purposes of this motion that the Defendant qualified as an agent or instrumentality of the Juárez Cartel (which the Government disputes), such that her assets were blocked, the Preliminary Forfeiture Order, entered June 13, 2023, extinguished the Defendant's interest and therefore any block. TRIA only applies to the assets "of" a terrorist party, *see Heiser v. Islamic Rep. of Iran*, 735 F.3d 934, 937-40 (D.C. Cir. 2013) (execution under TRIA requires the terrorist party, or its agency or instrumentality, to have an ownership interest in the property to be executed upon), but the Defendant no longer has an ownership interest in the Forfeiture Assets, and therefore TRIA no longer applies, assuming it ever did.[17]

        In such circumstances, where the alleged terrorist party or agency thereof no longer has an interest in assets subject to forfeiture, there cannot be said to be any conflict between TRIA

---

[17] The Amended Petition cites U.S. Senator Tom Harkin regarding passage of TRIA in 2002 (the term "'blocked asset'" includes any asset of a terrorist party held by the United States and "'such terrorist party assets . . . are not immunized from court procedures to execute against such assets,'" (Amended Petition at 4), but in that same statement, Senator Harkin goes on to clarify that "any assets as to which the United States claims ownership are not included in the definition of 'blocked assets' and are not subject to execution or attachment under this provision." 148 Cong. Rec. S11524 (November 19, 2002).

and 21 U.S.C. § 853, leaving the Petitioners here with no basis to assert a cognizable claim to the Forfeiture Assets. *See also United States v. Holy Land Found. For Relief & Dev.,* 722 F.3d 677, 687 (5th Cir. 2013) (TRIA Section 201 does not conflict with the criminal forfeiture provision of 21 U.S.C. § 853 and therefore the "notwithstanding" clause does not operate to trump criminal forfeiture).[18]

*(Text continued on next page)*

---

[18] The assets subject to forfeiture in *Holy Land* were indisputably blocked assets of Holy Land Foundation ("HLF"), an organization designated as a terrorist organization by the Treasury Department. The Office of Foreign Assets Control ("OFAC") had blocked all of HLF's funds, accounts, and other property, after which the U.S. government initiated a criminal investigation into HLF's activities. After the government filed a 42-count indictment against HLF, informing HLF of the Government's intent to seek forfeiture of all property involved in the charged money laundering offenses, but before the Government obtained a preliminary order of forfeiture, OFAC issued a license to the Government to pursue forfeiture of blocked assets. The court found that, because the Government held a license, the assets were no longer blocked assets, therefore TRIA and the forfeiture provisions of § 853 were not in conflict. Here, the Forfeiture Assets cannot be blocked property under any circumstances because of the Court's issuance of the Preliminary Forfeiture Order. As discussed above, the Preliminary Forfeiture Order served to divest the Cartel of any interest in the Forfeiture Assets (assuming it had such an interest), and the Government thus does not need a license to continue to pursue forfeiture. In any event, the Government in this instance does not concede that the Forfeiture Assets ever constituted blocked property of a terrorist organization or its agency or instrumentality, and therefore the Government maintains that no license is required for forfeiture of these assets as property involved in a money laundering conspiracy.

# IV.    <u>CONCLUSION</u>

The Amended Petition should be dismissed for lack of subject matter jurisdiction

under Rule 12(b)(1), or in the alternative, for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

DAMIAN WILLIAMS
Attorney for the United States

By:    ____/s_____
Tara M. La Morte
Matthew Shahabian
Jonathan Bodansky
Assistant United States Attorneys
(212) 637-1041/1046/2385

Dated: March 11, 2024
New York, New York