UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                :

UNITED STATES OF AMERICA

                                                                :

            - v. -

                                                                :      21 Cr. 343 (SHS)

YING SUN,

                                                                  :

                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

ADRIANA JONES, *et al.*,                          :

                          Petitioners.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S MEMORANDUM OF LAW IN REPLY TO PETITIONERS' OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS PETITIONERS' FIRST AMENDED PETITION

                                                                         DAMIAN WILLIAMS
                                                                         Attorney for the United States
                                                                         Southern District of New York

Tara La Morte
Matthew Shahabian
Jonathan Bodansky
Assistant United States Attorneys
      - *Of Counsel* -

The Government respectfully submits this reply memorandum of law in further support of its Motion to Dismiss (the "Motion") (Dkt. 297) the third-party Ancillary Amended Omnibus Petition (the "Amended Petition") (Dkt. 265) filed by petitioner Adriana Jones on behalf of fifty-six judgment creditors of the Juárez Cartel (the "Petitioners") claiming an interest in $3,322,452.41 in United States currency subject to forfeiture (the "Forfeiture Assets"). For the reasons set forth in the Motion and below, the Amended Petition should be dismissed for lack of standing, or in the alternative, for failure to state a claim.

### Whether the Forfeiture Assets Are "Blocked" Assets Under TRIA Is Irrelevant.

Petitioners contend that the "primary point of divergence" between Petitioners and the Government is whether or not the Forfeiture Assets constitute "blocked" assets. Petitioners' Memorandum of Law in Opposition to the Government's Motion to Dismiss (the "Opposition" or "Opp.") Dkt. 309 at 3. This misframes this issue, as Petitioners lack standing regardless of whether the Forfeiture Assets are blocked. (Indeed, the Government assumed for purposes of assessing standing that the Forfeiture Assets were blocked. *See* Motion at 13-21). As the Government described in its Motion, TRIA does not create any property right in blocked assets; rather, it makes such assets *available for* ("subject to") attachment by victims who secured a judgment against a designated terrorist party based on an act of terrorism. TRIA unlocks a procedural mechanism—the right to seek attachment, in compliance with applicable state law—it does not automatically create an attached property interest. *See* Motion at 18-21; *see also Smith ex rel. Estate of Smith v. Federal Reserve Bank of New York*, 346 F.3d 264, 271 & n.6 (2d Cir. 2003) ("As we have already explained, section 201 operates to empower a plaintiff with a 'judgment' against a 'terrorist party' to execute against any 'blocked assets' of that party. TRIA § 201(a), 116 Stat. at 2337."). Accordingly, even assuming the Forfeiture Assets are blocked (which

the Government contends they are not), it simply doesn't matter. Petitioners have *not* executed against the assets and therefore—like any other unsecured general creditor—they have no standing in this proceeding to contest forfeiture.

Adopting the Petitioners' view—that the Forfeiture Assets are blocked assets and therefore, TRIA alone differentiates Petitioners from other unsecured creditors by supplying them with standing, even absent attachment, to contest criminal forfeiture of the Forfeiture Assets— contravenes the plain language of TRIA and the caselaw interpreting it, and finds no support in the caselaw. *See* Opp. at 13-15, 20. Petitioners must have a present, legally cognizable interest in order to establish Article III and statutory standing; an unsecured or otherwise contingent interest is not sufficient. *See United States v. Church & Dwight Co.*, 510 F. App'x. 55, 57–58 (2d Cir. 2013) (claimant with a contingent interest based on the settlement of a private lawsuit lacked standing because the contingency—government's acquiescence—was not satisfied); *DSI Associates LLC v. United States*, 496 F.3d 175, 185 (2d Cir. 2007); *United States v. Ribadeneira,* 105 F.3d 833, 836 (2d Cir. 1997); *see also United States v. Chowaiki,* 369 F.Supp. 565, 575 (S.D.N.Y. 2019) (absent an attached security interest, claimant lacked a cognizable legal interest in property); *In re Arelma, S.A.,* No. 19 Mc 412 (LAK/GWG), 2023 WL 6449240, at *7 (S.D.N.Y. Oct. 3, 2023) (an unsecured interest in property as a judgment creditor is insufficient to confer Article III standing); *United States v. $10,000 in U.S. Currency,* No. 18-CV-1183 (GTS/CFH), 2020 WL 5757471, at *5 (N.D.N.Y. Sept. 28, 2020) (without a "lien or valid security interest" referencing the subject property, claimant lacked Article III standing). At most, Petitioners' caselaw establishes that, *upon attachment of blocked assets*, they may have priority over certain other unsecured creditors. That, however, has no relevance here, as Petitioners have not attached the Forfeiture Assets. Accordingly, for this Court to find in Petitioners' favor, the Court would

need to conclude that Petitioners have the legal ability to execute their Civil Judgment against the Forfeiture Assets *after* filing a petition (*i.e.* the Amended Petition in this case) asserting a legal interest in those assets without first securing a writ of attachment or execution in compliance with New York law. That supposed legal interest is not an interest at all, as it would necessarily be contingent on the very execution that has not occurred. *See United States v. Madoff,* No. 09 Cr. 213(DC), 2012 WL 1142292, at *3 (S.D.N.Y. Apr. 3, 2012) ("forfeitability of third-party interests is determined by federal law, while their existence is determined by state law"; looking to New Jersey law to determine if attorney took the steps necessary to acquire an attorney's lien on forfeited property). This would render the standing requirements of 21 U.S.C. §853(n) void. Therefore, Petitioners' request that the Court "find that the seized funds in the underlying case… are blocked assets subject to attachment and execution" is beside the point. Opp. at 1. The only question before the Court is whether Petitioners have constitutional and statutory standing under 21 U.S.C. §853(n) to petition the Court for a hearing to adjudicate their alleged interest in the Forfeiture Assets. The unconditional answer is no.[1]

---

[1] The Government maintains that Petitioners have failed to satisfy Article III standing requirements. *See* Mot. at 13-15. While Petitioners point to the Government's statements that the Forfeiture Assets were laundered on behalf of Mexican drug cartels (*see* Opp. at 8-11, 15-17), they fail to allege any facts plausibly suggesting that the Forfeiture Assets were laundered for, or linked to, the designated Juárez Cartel. And while they similarly point to other Mexican cartels that operated with the Juárez Cartel in describing the conduct underlying their Civil Judgment, again, they have failed to plausibly link those cartels with the Forfeited Assets. Nor have they plausibly alleged that those cartels are agencies or instrumentalities of the Juárez Cartel; at most the facts they propound suggest the cartels are sometimes adversaries and sometimes coordinate. (Opp. at 16). This is insufficient to plead an agency relationship. And, of course, it is Petitioners' burden to establish Article III standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992).

**Petitioners' Procedural Complaints Are Without Merit.**

Petitioners argue that the Government should not "fault Petitioners for failing to obtain a writ of attachment and/or execution" Opp. at 1, taking issue with the Government's request to stay the Attachment Proceeding before Judge Caproni, a proceeding initiated by Petitioners *after* they had already filed their first petition in this proceeding (without notice to the Government). Although the Petitioners consented to that stay, they nonetheless argue the Government was "disingenuous" and displayed "gamesmanship" in seeking first to stay that proceeding and then to move for dismissal of their petition in this proceeding. Opp. at 12. That is simply false and unfounded. To the contrary, the Government has consistently articulated its view to Petitioners that they lack standing to contest forfeiture of these assets and that the ancillary forfeiture proceeding is, by operation of statute, the only forum in which they are permitted to assert their claim. In fact, three weeks before Judge Caproni stayed the Attachment Proceeding— again, *on agreement of the parties*—the Government, in a letter to this Court filed via ECF on February 14, 2024, clearly stated that: 1) it intended to file a motion to dismiss the Amended Petition by the Court's March 11 deadline; 2) although the Government was not opposed to the Attachment Proceeding being consolidated before this Court, "execution of any judgment against these assets now is too late to be superior to the Government interest and, more fundamentally, is barred by Title 21, United States Code, Section 853(k),"; and 3) "as the Government will argue in its motion to dismiss" the Government's interest in property subject to criminal forfeiture arises at the time of the conduct giving rise to forfeiture pursuant to the relation-back doctrine. Dkt. 285. In other words, the Government laid out for the Court and the Petitioners what it intended to do

and then did so.[2]

As the Government explained to the Petitioners orally and in writing, whether or not the Attachment Proceeding was stayed has no bearing on whether they prevail here. As of the filing date of the Amended Petition on December 29, 2023, Petitioners' Civil Judgment was not attached to nor executed against the Forfeiture Assets. Therefore, Petitioners hold no legal interest in the Forfeiture Assets and consequently lack standing to proceed.

**The United States Is Authorized to Forfeit These Assets Pursuant to the General License Provisions of the Applicable OFAC Regulations.**

Petitioners spend the bulk of their Opposition arguing that the Government failed "to follow the law" (Opp. at 1) in that it was obligated to seek a license from the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") in order to proceed with forfeiture of these assets but failed to do so. From there, Petitioners argue that the Court's Preliminary Order of Forfeiture should be vacated. Petitioners are wrong. The Government was not required to affirmatively seek a license from OFAC to seek to forfeit the Forfeiture Assets, as the applicable sanctions regulations already vest the Government with authority to take this action. And of course, even if the Government were somehow required to seek a specific license, the failure to do so does not change the fact that Petitioners lack constitutional and statutory standing.[3]

---

[2] Furthermore, in a subsequent phone call with Petitioners' counsel in which counsel raised the gamesmanship concern, the Government stated that it has been consistent in communicating its position to counsel and that the Government would have made the same arguments in the Attachment Proceeding before Judge Caproni.

[3] And of course, a person who lacks standing cannot contest any issue in litigation. *United States v. Zorrilla-Echevarría*, 723 F.3d 298, 299 (1st Cir. 2013) (once court determined that the third party had no interest in the forfeited property, he had no standing to contest the procedural irregularities that led to the entry of the forfeiture order because "defects in the finding of forfeitability are no concern of his," quoting *United States v. Andrews*, 530 F.3d 1232, 1237 (10th

First, it is the Government's position that these assets do not constitute blocked assets of either the Juárez Cartel or of an agency of instrumentality of the Cartel and therefore no license is required for the United States to forfeit them. *See supra* n.1. However, to the extent any license might be required, the United States Government has a general license provided in the Kingpin Act's implementing federal regulations which encompasses official business such as criminal forfeiture proceedings. *See* 31 C.F.R. 598.513 ("All transactions prohibited by this part that are for the conduct of the official business of the United States Government by employees, grantees, or contractors thereof are authorized."). Likewise, Executive Order 14059 (Part 599), pursuant to which the Juárez Cartel is designated, contains a similar provision for conduct of official Government business. *See* 31 C.F.R. 599.509. Therefore, Petitioners' assertion that the Government did not "follow the legislatively mandated blocking regime" is simply wrong. Opp. at 13.

Petitioners further cite *United States v. Holy Land Foundation for Relief & Dev.*, 722 F.3d 677 (5th Cir. 2013) in claiming that the Government here has faltered on (or more pointedly "manipulated") the blocking regime because the Government in *Holy Land* obtained a license from OFAC prior to proceeding with forfeiture, where the Government here did not. Opp. at 8. But as already stated, the Government's criminal forfeiture action here is authorized by the general license provision of 31 C.F.R. 598.513; no specific license was required. By contrast, in *Holy Land*, OFAC had blocked the Holy Land Foundation's assets pursuant to the International Emergency Economic Powers Act ("IEEPA") and Executive Orders 12947 and 13224, which,

---

Cir. 2008)).   Similarly, a third party has no standing to contest the entry or vacatur of a forfeiture order.

unlike the current versions of the Kingpin Act and EO 14059, at that time required a specific license to authorize a transaction in assets otherwise blocked pursuant to IEEPA.  *See* 31 C.F.R. 594.202, 594.201.[4]

The license question, therefore, simply distracts from the core holding of *Holy Land*, as set forth in the Government's Motion, that the attachment provision of TRIA does not trump the criminal forfeiture provisions of 21 U.S.C. § 853.   Motion at 26.

**Execution Against the Forfeiture Assets Now Would Be Futile.**

Finally, even if the Court were to (i) entertain the Amended Petition; (ii) grant Petitioners a hearing; (iii) hear evidence from the parties; (iv) determine that the Forfeiture Assets are blocked assets of the Juárez Cartel or blocked assets of one of its agencies or instrumentalties and therefore are subject to attachment under TRIA; and (v) allow the Petitioners to attach their Civil Judgment to the Forfeiture Assets – Petitioners' claim would still fail on the merits.   Under 21 U.S.C. § 853(n)(6), Petitioners can only prevail if they had an interest in the Forfeiture Assets superior to that of the defendant "at the time of the commission of the acts which gave rise to the forfeiture…" Because the relation-back doctrine indisputably provides that all right, title and interest in property subject to criminal forfeiture vests in the United States upon commission of the act giving rise to forfeiture, any attachment now by Petitioners to the Forfeiture Assets would be too late for them to have priority over the Government's senior interest under § 853(n)(6).  *See*

---

[4] The same general license provision for official business of the United States Government was subsequently added to the Global Terrorism Sanctions Regulations governing enforcement of sanctions under IEEPA on December 21, 2022.  *See* 87 Fed. Reg. 78481 (December 21, 2022) (codified at 31 C.F.R. § 594.518).

7

21 U.S.C. § 853(c).[5]

Petitioners' argument that the relation-back doctrine does not apply here because the Government lacks a license to forfeit these assets also fails. (Opp. at 22-24). As stated above, the Government may seek criminal forfeiture of assets under the general license provision of 31 C.F.R. 598.513. Furthermore, EO 14059, which Petitioners argue blocks assets upon entry into the United States (and so, they argue, forecloses application of the relation-back doctrine here) went into effect on December 15, 2021, six months after the Forfeiture Assets had already been identified in the Indictment as subject to criminal forfeiture.[6] Furthermore, it is temporally impossible that Petitioners held any interest in the Forfeiture Assets at the time of the criminal conduct giving rise to forfeiture because they did not obtain their Civil Judgment until June 24, 2022, *after* the criminal conduct at issue in this case and a year after the Indictment was filed.[7]

---

[5] And even if the relation-back doctrine did not apply to these assets (which the Government does not concede), the Government's interest certainly attached to these assets no later than June 13, 2023, when this Court entered the Preliminary Forfeiture Order forfeiting all of the defendant's right, title and interest in these assets to the United States. Again, any attachment of Petitioners' Civil Judgment against the Forfeiture Assets now comes too late to defeat the interest of the United States in forfeiting these assets. Petitioners cite *Hausler v. JPMorgan Chase Bank, N.A.,* 845 F.Supp.2d 553, 569 (S.D.N.Y. 2012), *rev'd on other grounds* 770 F.3d 207 (2d Cir. 2014) for the proposition that terrorist victims holding judgments must be "first in line." Opp. at 14. But as mentioned *supra*, in *Hausler*, the court was prioritizing competing claims to blocked assets of a terrorist entity in an attachment proceeding where only one party held a judgment as a terrorist victim eligible for execution under TRIA; the remaining claimants were commercial parties who, the court determined, had other "avenues of redress," and therefore as a matter of law the court found the one TRIA claim to be superior. *Hausler* 845 F.Supp.2d 553, 571. Conversely, this is a criminal ancillary proceeding where the Government holds a superior interest in forfeiting assets involved in criminal conduct. And in any event, TRIA itself does not provide for relative priority of writs of execution–those priorities would be determined by applicable state law. *See* TRIA § 201; Fed. R. Civ. P. 69.

[6] Five of the six assets comprising the Forfeiture Assets were listed in the Indictment.

[7] Like Petitioners here, the *Holy Land* petitioners also could not prevail under 21 U.S.C. § 853(n)

Relatedly, again, the fact that the Forfeiture Assets may have been blocked upon entry into the United States simply does not confer standing upon the Petitioners.

## **CONCLUSION**

For the reasons sent forth above, and in its Memorandum of Law in Support of its Motion to Dismiss, the Government respectfully submits that its motion to dismiss Petitioners' Amended Petition should be granted.

Respectfully submitted,

DAMIAN WILLIAMS
Attorney for the United States

By: ____/s_____
Tara M. La Morte
Matthew Shahabian
Jonathan Bodansky
Assistant United States Attorneys
(212) 637-1041/1046/2385

Dated: April 24, 2024
        New York, New York

---

– they neither had an interest in the Holy Land Foundation's assets at the time of the criminal conduct giving rise to forfeiture nor were they bona fide purchasers for value of the HLF's assets after the crimes were committed. *Holy Land*, 722 F.3d at 685.